# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
## CASE: 19-CV-22799-GAYLES

Sybil Harris, as Personal Representative of the    )
Estate of Jamar Edward Rollins Sr., deceased, and on    )
Behalf of all beneficiaries,    )
      Plaintiffs    )
          )
Vs.    )
          )
MIAMI-DADE COUNTY (State Law Count)    )
Detective Andrew Garcia - Individual Capacity    )
Detective Jesus Coto - Individual Capacity    )
      Defendants

## THIRD AMENDED COMPLAINT AND JURY DEMAND

This is a civil rights action in which Plaintiff seeks relief for the violation of rights secured by 42 USC 1983, 1988, and the Fourth Amendment to the United States Constitution, the Florida Constitution and Florida state law.

1. The claims arose on or about December 30, 2016 from an incident where the above captioned Defendants, Detectives Andrew Garcia and Detective Jesus Coto, from the Miami-Dade County Police Department; hereinafter, (MDCPD), acting under color of state law statutes, ordinances, regulations, policies, customs and usages of Miami-Dade County, who intentionally and willfully subjected Jamar Rollins to assault, battery, excessive force, wrongful death and intentional infliction of emotional distress for the decedent's family members.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. 1983, the, Fourth and Fourteenth Amendments to the United States Constitution and the laws of the State of Florida. Jurisdiction of this Court is also predicated on 28 U.S.C. §1331 and the supplemental jurisdiction of this court under 28 U.S.C. §1367(a), and 28 U.S.C. §1988.

3. The amount in controversy exceeds $75,000 excluding interest and costs.

## VENUE

4.  Venue is proper in the Southern District of Florida because the incident that gave rise to this action occurred in the West Perrine neighborhood located in Miami-Dade County Florida and the officers that are responsible for the constitutional violations work within the boundaries of the Southern District of Florida.

## PARTIES

5.  At all times material, **JAMAR ROLLINS**, deceased, was a 21 year-old male, resident of Miami-Dade County, Florida and a citizen of the United States of America and was unmarried at the time of the events giving rise to this action.

6.  Plaintiff, **Sybil Harris,** is the mother of, Jamar Edward Rollins Sr., and is duly appointed Personal Representative of the ESTATE OF JAMAR EDWARD ROLLINS Sr.

7.  As Personal Representative of the Estate of Rollins, deceased, Plaintiff **SYBIL HARRIS**, brings this action on behalf of the following survivors of Rollins:

    a. (JER, III a minor), lineal descendent, natural born child of the decedent.
    b. Sybil Harris, lineal descendent, mother of decedent.
    c. James Edward Rollins Sr., lineal decedent, father of the decedent.

8.  Defendant, **MIAMI-DADE COUNTY,** is a political subdivision of the State of Florida, duly organized and existing under Florida law and at all times relevant to this complaint employed Detectives Andrew Garcia and Jesus Coto.

9.  Defendant, **Detective Andrew Garcia**, at all times relevant hereto and in all actions described herein, was acting under color of law working in the capacity of Detective for the Miami Dade-County Police Department is being sued in his individual capacity.

10. Defendant, **Detective Jesus Coto**, at all times relevant hereto and in all actions described herein, was acting under color of law working in the capacity of Detective for the Miami Dade-County Police Department is being sued in his individual capacity.

## **STATEMENT OF FACTS**

11.     All information is being taken directly from a public record request obtained from the Miami-Dade State Attorney Office's Close-Out Memo #20181t28134r3326 3, public records request and the Miami-Dade Medical Examiner's Report.

12.     On or about December 30, 2016 at approximately 6:40 p.m., Defendants were operating under color of state law as Detectives with the Miami-Dade County Police Department, in an unmarked vehicle without uniforms in an undercover capacity.

13.     Defendant Garcia was patrolling the West Perrine neighborhood located in Miami-Dade County, Florida with his partner Detective Coto when they attempted to initiate a traffic stop on Jamar Rollins by activating their red and blue visor lights.

14.     Defendants claimed that a passenger in the subject vehicle later to be identified as (Devin Smith) leaned out of the car while it was still moving and pointed a firearm at their vehicle.

15.     According to police reports Devin Smith then jumped out of the moving vehicle and fled on foot.

16.     One version of the facts are that Detective Garcia chased Smith while Detective Coto remained in the unmarked police vehicle.

17.     In another police report it states that **both** officers got out of their vehicle where Detective Coto initiated pursuit of the passenger and Detective Garcia advanced toward the passenger door of Rollins vehicle.

18.     Detective Coto reports that he observed Detective Garcia look inside the open passenger's side door of the Rollins vehicle.

19.     Detective Garcia reports that he saw Jamar Rollins with a weapon in hand and that he shot him multiple while he was still in the vehicle resulting in his death.

20.     Eye -Witnesses give a different stories as to how and where Rollins was shot and killed by Detective Garcia.

3

## **WITNESSES**

21.   Nine witnesses stated that they saw when Detective Garcia commanded Rollins to place his hands out of the window and he complied.

22.   Detective Garcia commanded Jamar Rollins to get out of his vehicle and he complied with his hands up when Detective Garcia shot Rollins six times.

23.   Witness (M.S.) stated that the officer that got out of an unmarked police vehicle shot Jamar Rollins in the street while his hands were up.

24.   Witness (T.M.) stated that he saw a white Camry chasing behind his friend's car at a high rate of speed and then the officer jumped out and asked Rollins to put his hands out of the car window.

25.   Witness (T.M.) further stated that Rollins got out of the vehicle with his hands up and the officer then shot Rollins one time with a Taser and then began shooting Rollins five times with his handgun.   (T.M.) stated that he knew Rollins and never saw him with a gun.

26.   Witness (L.T.) stated that she could hear someone yell "GET OUT OF THE FUCKING CAR" then Rollins used his left hand and got out of the car and faced the officer with both hands above his head and then witnessed the officer shoot Rollins five or six times.

27.   Witness (T.R.) stated that he saw a white police vehicle pull up behind a black car when he saw a person run up the passenger's side of the black vehicle and immediately heard rapid gunfire and then the officer left Rollins on the ground to die.

28.   Witness (K.R.) stated that he saw Jamar come down the street with the police behind him when the police told him to get out of the car and to put his hands up.

29.   When Rollins got out of the car the police shot him for no reason with a Taser and then started shooting him with his handgun.

30.   Witness (K.R.) stated that other people started yelling why did you shoot him for no reason?

31.   Witness (C.J.) stated that he saw when Rollins was pulled over by an unmarked police vehicle and was commanded that he get out of his vehicle.

32.   Witness (C.J.) stated that an officer jumped out of the police car and came up to the passenger's side of the vehicle.

33.   When Rollins got out of the car with his hands up, (C.J.) said that he heard five or six shots fired and the officer walked away never looking back to see if Rollins was alive or dead.

34.   Witness (D.W.) stated that Rollins was ordered out of the car and he complied and when he exited the vehicle the officer pulled out his gun and she heard shots ring out and Rollins fell dead in the street.

35.   Witness (D.W.) stated that she overheard one of the officer on the scene say that they needed to find a gun.

36.   According to police reports, Rollins, with all of his gunshot wounds somehow exited his vehicle, and managed to throw a handgun across the street, before collapsing and succumbing to his injures where he was pronounced dead at the scene.

37.   There is no dash-cam footage from the unmarked police vehicle that recorded the shootings that resulted in Jamar Rollins Death.

38.   There is no body-cam footage from Detective Garcia that was placed into evidence that recorded the shootings that resulted in Jamar Rollins Death.

39.   There is no body-cam footage from Detective Coto that was placed into evidence that recorded the shootings that resulted in Jamar Rollins Death.

40.   The only undisputed evidence that Plaintiff has in the above captioned case is the body of the decedent, Jamar Rollins.

## AUTOPSY FINDINGS OF JAMAR ROLLINS

41.   The first finding was a penetrating gunshot wound of the right arm and neck, the gunshot wound injury of the right subclavian vein.

42.   The second autopsy finding was two penetrating gunshot wounds of the right arm and chest constituting a fracture of the right humerus, bilateral hemothoraces and gunshot wound injuries of the lungs, esophagus and led mainstem bronchus.

43.   The third autopsy finding was a perforating gunshot wound to the right forearm; a fracture of the right ulna.

44.   The fourth autopsy finding was a perforating gunshot wound of the abdomen, hemoperitoneum; gunshot wound injuries of cecum, small intestine, and intestinal mesentery.

45.   The fifth autopsy finding was a perforating gunshot wound to the left thigh,

46.   The sixth autopsy finding was a gunshot wound to the left thigh.

## PERIMETER SEARCH

47.   During the perimeter search for the passenger that fled on foot, later identified as (Devin Smith), led to an open door of an unoccupied duplex located at 10140 W Indigo St.

48.   Homicide investigators obtained Consent to Search from the occupant even though it was pointed that the building was unoccupied.

49.   Somehow officers found three semi-automatic handguns located in two bedrooms of the residence.

50.   A records search revealed all three handguns were reported stolen during separate incidents in Miami-Dade and Broward County

51.   The following weapons were discovered during the investigation:  (IR # 34)
      1. Silver/black handgun Kimber Eclipse Ultra II45 caliber SAI 146477, a

Black Glock 26.9 mm Sn WUD829, Black Glock 23, 40 caliber SAI NBZ552, Black Glock 19 Gen 4,9mm SAWU4I7.

52. All firearms were processed and examined for presence of latent prints but no latent prints of value were developed.

53. DNA Laboratory Analysis - Glock 19 Gen 4 - a mixture of DNA profiles consisting of 3 contributors were obtained from the grip.

54. None of the weapons supported an inference of inclusion or exclusion when comparing the DNA profile of Jamar Edward Rollins.

55. A mixture of DNA profiles consisting of 3 contributors were obtained from the front sights excluded Jamar Edward Rollin as a possible contributor of the mixture of DNA profiles obtained. (IR # 21).

56. The Miami-Dade County State Attorney submits that Detective Garcia declined to provide a sworn statement or proffer and statements from witnesses do not clearly establish the Detective's reasons for shooting.

57. The Miami-Dade State Attorney concluded that they did not have sufficient evidence to determine whether Detective Garcia was legally justified in the use of deadly force by firing his weapon.

58. Given the circumstances the Miami-Dade County State attorney's Office concluded that they could not in good faith proceed with criminal charges against Detective Garcia.

## INDIVIDUAL CAPACITY

59. Plaintiffs seek to impose individual liability upon Defendant officers for actions taken under color of state law which cause the deprivation of Plaintiffs' Federal Rights.

60. The officers were duty, wearing undercover police uniforms, used police equipment; squad cars, handcuffs, badges, claimed to be officers, and carried out the traffic stop.

61. Defendant's actions violated Plaintiffs' Fourth Amendment right to be secure in their persons, houses, papers, and effects, against unreasonable searches

and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause.

62.   The conduct of the Defendant Officers violated clearly established law including but not limited to the following: assault, battery, excessive force, failure to intervene wrongful death and violation of equal protection of the law violations.

## QUALIFIED IMMUNITY

63.   Defendants in this case are not eligible for Qualified Immunity because they were not performing discretionary functions and their conduct violated "clearly established statutory and constitutional rights of which a reasonable officers would have known at the time that their actions were taken.

64.   Detective Garcia's in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing.

65.   Qualified immunity is not available to Detective Garcia because the aforementioned conduct described herein violates clearly established statutory and constitutional rights of which reasonable officers would have known at the time that their actions were taken.

## CONDITIONS PRECEDENT

66.   All conditions precedent has been performed or has occurred.  Notices have been sent to  Department of Financial Responsibility in Tallahassee, Florida and to the Miami-Dade County Mayor in an attempt to resolve this claim to no avail and has forced Plaintiff to file this action seeking relief and damages.

67.   This matter has not been settled or otherwise been disposed of and a copy of the notices will accompany this complaint.

## COUNT ONE
## VIOLATION OF 42 USC 1983
## MIAMI-DADE COUNTY

**Plaintiff re-alleges the allegations set forth in Paragraphs 1-67 above and incorporates same herein by reference.**

68.   Miami-Dade County is being sued for constitutional deprivations visited pursuant to a governmental custom even though such custom has not received formal approval through the official decision-making channels.

69.   Miami-Dade County and Miami-Dade Police Department maintained policies and/or customs exhibiting deliberate indifference to the Constitutional rights of persons in Miami Dade County which caused the constitutional violation and wrongful death of Jamar Rollins and others.

70.   It was the policy and/or custom of Miami-Dade County to inadequately and improperly investigate citizen complaints of police misconduct, by Miami-Dade Police Department Officers.

71.   Miami-Dade County constantly fails to encourage independent investigations into the use of aggressive and deadly force by Miami-Dade Police Department officers.

72.   The constant failure of Miami-Dade County to discipline officers for use of excessive and unwarranted deadly force, established a policy and practice of condoning the use of excessive and unauthorized deadly force by the Miami Dade Police Department.

73.   It was the policy and/or custom of Miami-Dade County and the Miami Dade County Police Department to inadequately supervise and train its officers, including Defendants, and others unknown thereby failing to adequately discourage further constitutional violations on the part of its police officers.

74.   Miami-Dade County deliberate indifference to the risk created so that citizens of Miami-Dade County would be subjected to excessive and unwarranted deadly force at the hands of officers, including the Defendants.

75.    Miami-Dade County State Attorney is the authorizing decision maker that has engaged in deliberate conduct and custom to protect police officers that engage in deadly or excessive force which is the driving force that caused the constitutional rights violations to Jamar Rollins.

76.    Prior to the events giving rise to this claim, there had been longstanding excessive force claims brought against the Miami-Dade County and its officers.

77.    Miami-Dade County is liable in this case under 42 USC 1983 because of their deliberate action of not prosecuting police officer involved shootings directly caused deprivation of federal rights of Jamar Rollins and others practically has force of law.

78.    Prior to the shooting Death of Jamar Rollins, the Miami-Dade County State Attorney had not charged a police officer for a fatal shooting while on duty in 25 years.

79.    Miami-Dade County's disregard for police conduct that involves excessive and/or use of deadly force to the point where officers have become comfortable in the use thereof without any repercussions or prosecution.

80.    After the Rollins shooting in  2016 there were 73 police shootings, fatal and non-fatal that have come up for review; fifty-four are closed, eighteen remain open and just one resulted in a criminal charge that ended with only a misdemeanor conviction.

81.    Although the seventy-three shootings listed in paragraph 81 took place after Jamar Rollins was killed by the Defendants, it shows that the County has a custom of not prosecuting police officers for on-duty shootings.

82.    Through the discovery process undersigned will provide the names of the deceased/injured individuals that took place in Miami-Dade County prior to the Rollins shooting through the discovery process.

83.    Undersigned attorney has only been on the case since August 4, 2020 and has not had the opportunity to request discover from Miami-Dade County on the individuals that were killed or injured prior to Jamar Rollins death as Miami-Dade County has not filed an answer to the complaint to begin the discovery process.

84.    Miami-Dade County seems to have arranged their affairs on an assumption that they can violate constitutional rights for an indefinite period.

85.    Because of Defendant's actions, Plaintiff will be seeking relief that is outlined in the prayer for relief of this complaint.

## COUNT TWO
### VIOLATION OF Civil Rights While Acting
### Under Color of Law 42 U.S.C. 1983 Wrongful Death
### DETECTIVE ANDREW GARCIA

**Plaintiff re-alleges the allegations set forth in Paragraphs 1-67 above and incorporates same herein by reference.**

86.    On or about December 30, 2016, **Detective Andrew Garcia** was employed by Miami-Dade County when he was riding in an unmarked police vehicle when a traffic stop was initiated on Jamar Rollins, now deceased as a result of Detective Garcia's actions.

87.    Detective Garcia was acting under color of state law when he violated Rollins rights under the Fourth and Fourteenth Amendment as guaranteed by the United States Constitution.

88.    Detective Garcia's actions are unreasonable because of the nature of Rollins infraction as he was pulled over for failing to make a complete stop at a stop sign which is only punishable by a fine and court costs.

89.    There was a passenger in Rollins vehicle later identified as Devin Smith that jumped out of the vehicle while it was still moving and fled on foot.

90.    According to the police reports, Jamar Rollins remained in his vehicle in the driver's seat when Detective Garcia came up on the passenger's side of the car and claimed that he saw Rollins with a handgun and shot him six times.

91.   There was no weapon found at the scene that could be linked to Jamar Rollins through finger prints or DNA analysis and in one test Rollins was excluded altogether from having that weapon.

## EYE WITNESS ACCOUNT OF THE INCIDENT

92.   At least nine witnesses reported that the police report is not a true depiction of the events that took place resulting in Rollins death.

93.   Nine witnesses will testify that Rollins, was seated in his vehicle when Detective Garcia instructed him to put both of his hands outside of the window of his vehicle and he complied.

94.   Rollins was then ordered to get out of his vehicle and to hold his hands up and Rollins complied.

95.   Detective Garcia fired multiple five or six shots at Rollins hitting him in his upper and lower body which resulted in his death.

96.   Weapon located in a searched area none of the weapons could be matched to Rollins by finger print or DNA analysis and in one case Rollins was excluded from handling the weapon.

97.   The acts and conduct by **Detective Andrew Garcia's** was clearly the direct and proximate cause of serious injuries including death to Rollins.

98.   A substantive due process violation exists where rights are violated no matter what process precedes, accompanies, or follows the unconstitutional action.

99.   As a result of **Detective Andrew Garcia's** total disregard for the life of the decedent, Jamar Rollins, Plaintiffs are seeking damages outlined in the prayer for relief of this complaint.

## COUNT THREE
## VIOLATION OF Civil Rights While Acting
## STATE LAW CLAIM Wrongful Death
## DETECTIVE ANDREW GARCIA

**Plaintiff re-alleges the allegations set forth in Paragraphs 1-67 above and incorporates same herein by reference.**

100. On or about December 30, 2016, **Detective Andrew Garcia** was employed by Miami-Dade County when he was riding in an unmarked police vehicle when a traffic stop was initiated on Jamar Rollins, now deceased as a result of Detective Garcia's actions.

101. Detective Garcia was acting under color of state law when he violated Rollins rights under the Fourth and Fourteenth Amendment as guaranteed by the United States Constitution.

102. Detective Garcia's actions are unreasonable because of the nature of Rollins infraction as he was pulled over for failing to make a complete stop at a stop sign which is only punishable by a fine and court costs.

103. There was a passenger in Rollins vehicle later identified as Devin Smith that jumped out of the vehicle while it was still moving and fled on foot.

104. According to the police reports, Jamar Rollins remained in his vehicle in the driver's seat when Detective Garcia came up on the passenger's side of the car and claimed that he saw Rollins with a handgun and shot him six times.

105. There was no weapon found at the scene that could be linked to Jamar Rollins through finger prints or DNA analysis and in one test Rollins was excluded altogether from having that weapon.

## EYE WITNESS ACCOUNT OF THE INCIDENT

106. At least nine witnesses reported that the police report is not a true depiction of the events that took place resulting in Rollins death.

107. Nine witnesses will testify that Rollins, was seated in his vehicle when Detective Garcia instructed him to put both of his hands outside of the window of his vehicle and he complied.

108. Rollins was then ordered to get out of his vehicle and to hold his hands up and Rollins complied.

109. For no apparent reason Detective Garcia fired multiple shots at Rollins striking him in his upper and lower body which resulted in his death.

110. Again although there was some weapon located in a searched area none of the weapons could be matched to Rollins by finger print or DNA analysis and in one case Rollins was excluded from handling the weapon.

111. The acts and conduct by **Detective Andrew Garcia's** was the direct and proximate cause of serious injuries including death to Rollins.

112. A substantive due process violation exists where rights are violated no matter what process precedes, accompanies, or follows the unconstitutional action.

113. Because of Defendant's actions, Plaintiff will be seeking relief that is outlined in the prayer for relief of this complaint.

### **COUNT FOUR**
### **STATE LAW-NEGLIGENCE**
### **MIAMI-DADE COUNTY**

**Plaintiff re-alleges the allegations set forth in Paragraphs 1-67 above and incorporates same herein by reference.**

114. Miami-Dade County has a duty to insure that their employees do not violate the constitutional rights of the citizens of the county, including Jamar Rollins.

115. Miami-Dade County has a duty to train employees including Defendant so that they do not violate the constitutional rights of the citizens within the county including Jamar Rollins.

116.   Miami-Dade County breached that duty when their agents negligently caused Jamar Rollins death by among other things, by failing to create, implement and use proper procedures for using deadly force.

117.   Miami-Dade County failed to have a proper plan in place for pulling over drivers and failing to adequately supervise its agents, failing to adequately train its agents, under the control and supervision, working on behalf of the Miami-Dade County and were individually negligent in the execution of this traffic stop.

118.   Defendant has in its law enforcement officers, over which it exercised control and supervision. At all times material to this action, Defendant authorized these agents and employees to act for Defendant when they committed the negligent and wrongful acts alleged herein.

119.   Miami-Dade County's agents and employees accepted the undertaking of acting on behalf of Defendant when they committed the negligent and wrongful acts which cause the injuries alleged herein.

120.   Because of Defendant's actions, Plaintiff will be seeking relief that is outlined in the prayer for relief of this complaint

## COUNT FOUR
## FAILURE TO INTERVENE 42 USC 1983
## DETECTIVE COTO

   Plaintiff re-alleges the allegations set forth in Paragraphs 1-67 above and incorporates same herein by reference.

121.   Defendant, Jesus Coto, as he responsible for his actions while he was employed with Miami-Dade Police Department.

122.   As Police Detective, Jesus Coto, had a duty to intervene when his fellow officer, Detective Garcia violated Plaintiffs clearly established constitutional rights including but not limited to assault, battery, excessive force, all leading to Rollins death.

123. Detective Jesus Coto claims in his statement that he remained in his unmarked police vehicle and watched and at all times was in voice and visual contact with the Detective Garcia.

124. Jesus Coto had time and a duty to intervene and stop Detective Garcia from violating Jamar Rollins clearly established constitutional rights but failed to do so.

125. As a direct result of Detective Coto's inaction, Jamar Rollins is dead leaving behind his mother, father and minor child.

126. A substantive due process violation exists where rights are violated no matter what process precedes, accompanies, or follows the unconstitutional action.

127. As a result of **Detective Andrew Garcia and Jesus Coto's** total disregard for the life of the decedent, Jamar Rollins, Plaintiffs will be seeking damages as outlined in the prayer for relief of this complaint.

## COUNT SIX
## VIOLATION OF Civil Rights While Acting
## STATE CLAIM WRONGFUL DEATH
## DETECTIVE ANDREW GARCIA

**Plaintiff re-alleges the allegations set forth in Paragraphs 1-67 above and incorporates same herein by reference.**

128. On or about December 30, 2016, **Detective Andrew Garcia** was employed by Miami-Dade County when he was riding in an unmarked police vehicle when a traffic stop was initiated on Jamar Rollins, now deceased as a result of Detective Garcia's actions.

129. Detective Garcia was acting under color of state law when he violated Rollins rights under the Fourth and Fourteenth Amendment guaranteed by the United States Constitution.

130.   Detective Garcia's actions are unreasonable because Rollins was pulled over for failing to make a complete stop at a stop sign which is only an infraction punishable by a fine and court costs.

131.   There was a passenger in Rollins vehicle later identified as Devin Smith that jumped out of the vehicle while it was still moving and fled on foot.

132.   According to the police reports, Jamar Rollins remained in his vehicle in the driver's seat when Detective Garcia came up on the passenger's side of the car and claimed that he saw Rollins with a handgun and shot him six times.

133.   There was no weapon found at the scene that could be linked to Jamar Rollins through finger prints or DNA analysis and in one test Rollins was excluded altogether.

## EYE WITNESS ACCOUNT OF THE INCIDENT

134.   At least nine witnesses reported that the police report is not a true depiction of the events that took place resulting in Rollins death.

135.   Nine witnesses will testify that Rollins, was seated in his vehicle when Detective Garcia instructed him to put both of his hands outside of the window of his vehicle and he complied.

136.   Rollins was then ordered to get out of his vehicle and to hold his hands up and that is when Detective Garcia fired multiple shots at Rollins hitting major organs resulting in his death.

137.   Although there was some weapon located in a searched area none of the weapons could be matched to Rollins by finger print or DNA analysis and in one case Rollins was excluded from handling the weapon.

138.   The acts and conduct by **Detective Andrew Garcia's** was clearly unreasonable and the direct and proximate cause of serious injuries including death to Rollins.

139.   **Detective Andrew Garcia's** actions were reckless and wanting in care as to constitute a flagrant disregard of human life, human rights, safety of the deceased, Jamar Rollins.

140. Detective Garcia's actions are tantamount to him playing the roles of judge, jury and executioner in the shooting death of Rollins.

141. A substantive due process violation exists where rights are violated no matter what process precedes, accompanies, or follows the unconstitutional action.

142. As a result of **Detective Andrew Garcia's** total disregard for the life of the victim Jamar Rollins, Plaintiffs are seeking damages outlined in the prayer for relief of this complaint.

## COUNT SEVEN
## ASSAULT AND BATTERY
## DETECTIVE ANDREW GARCIA

**Plaintiff re-alleges the allegations set forth in Paragraphs 1-67 above and incorporates same herein by reference.**

143. There is no evidence that the vehicle that when Detective Coto and Detective Garcia pulled Rollins over in had a dash cam or if they wore body cams that filmed the shooting death of Jamar Rollins.

144. Defendant made an offensive contact with Rollins when he made offensive contact shooting him multiple times during a traffic stop made in the capacity as an undercover officer with the Miami-Dade County Police Department.

145. Detective Garcia committed acts intending to cause grave harm to Jamar Rollins when he shot him five to six times striking him in the upper and lower body causing damage to major damage resulting in his death.

146. Rollins succumbed to his injuries as a result of being shot by Detective Garcia leaving behind lineal descendants: a mother, father, and minor child under the age of seven years old.

147. As a result of **Detective Andrew Garcia's** actions he ended the life of Jamar Rollins.

148. Plaintiffs will be seeking damages outlined in the prayer for relief in this complaint.

## **PRAYER FOR RELIEF**

*WHEREFORE,* Plaintiff prays for the following relief:

a. Judgment for compensatory damages in excess of $75,000 dollars
b. Attorney fees pursuant to 42 U.S.C. 1988
c. Cost of Suit
d. Compensatory damages
e. Consequential damages
f. Damages for pain and suffering
g. Embarrassment and humiliation
h. Funeral expenses
i. Loss of capacity for enjoyment of life
j. Mental anguish
k. Punitive damages against Detectives Garcia and Coto
l. Such other relief as this Honorable Court may deem just and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have e-filed this amended complaint to the clerk of court and to Defendants' attorney's at their designated e-mail addresses listed this December 1, 2020.

Respectfully submitted by,

*/s/ Gregory D. Curtis Esq.*
Gregory D. Curtis Esq.
Attorney for the family of Jamar Rollins
17325 N.W. 27th
Avenue Suite 103
Miami Gardens, Florida 33056

Florida Bar No.: 0492108
Tel: (305) 622 9199
Fax: (305) 622 9129
Florida Bar # 0492108
curtislegalgroup@aol.com

## SERVICE LIST

Abagail Price-Williams, Miami-Dade County Attorney
Anita Viciana, Assistant Miami-Dade County
Counsel for Defendants Miami-Dade County, Andrew Garcia and Jesus Coto
111 N.W. 1St. Street
Suite 2810
Miami, Florida 33128
Email: anita@miamidade.gov