**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:19-cv-22799-GAYLES**

**SYBIL HARRIS, as Personal Representative**
**of the Estate of Jamar Edward Rollins,**

      Plaintiff,

v.

**MIAMI-DADE COUNTY, *et. al.,***

      Defendants.

_____/

**<u>ORDER</u>**

**THIS CAUSE** comes before the Court on Defendants' Motion to Dismiss Third Amended

Complaint (the "Motion") [ECF No. 88]. The Court has reviewed the Motion and the record and

is otherwise fully advised. For the following reasons, the Motion is granted in part.

## I.      BACKGROUND[1]

On or about December 30, 2016 at approximately 6:40 p.m., Detectives Andrew Garcia

and Jesus Coto were patrolling the West Perrine neighborhood located in Miami-Dade County,

Florida, in an unmarked vehicle. Detectives Garcia and Coto activated their red and blue visor

lights and attempted to initiate a traffic stop on Jamar Rollins for failing to make a complete stop

at a stop sign. Shortly thereafter, a passenger in the vehicle, Devin Smith, leaned out of the car

while it was still moving and pointed a firearm at the detectives' vehicle. Smith then jumped out

of the moving vehicle and fled on foot.

---

[1] As the Court is proceeding on a Motion to Dismiss, it takes Plaintiff's allegations in the Third Amended
Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

One report indicates that Detective Garcia subsequently chased Smith while Detective Coto remained in the unmarked police vehicle. Yet, another report states that both officers got out of their vehicle where Detective Coto initiated pursuit of the passenger and Detective Garcia advanced toward the passenger door of Rollins's vehicle. Detective Coto reports that he observed Detective Garcia look inside the passenger's side door of the Rollins's vehicle, which was open. Multiple accounts state that Detective Garcia ordered Rollins to exit the vehicle. Detective Garcia claims he saw Rollins with a handgun, despite multiple eyewitness accounts that Rollins did not have a gun. Detective Garcia shot Rollins multiple times while Rollins was still in the vehicle. Rollins (hereafter "Decedent") was pronounced dead at the scene.

Decedent's mother, and appointed personal representative, initiated this action on December 27, 2018 in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida against Miami-Dade County, Miami-Dade Police Department, Detective Andrew Garcia, and Detective Jesus Coto. [ECF No. 1-1]. On July 8, 2019, the defendants removed this action to this Court pursuant to federal question jurisdiction. [ECF No. 1]. On December 1, 2020, Plaintiff filed its Third Amended Complaint ("TAC")[2] dropping Miami-Dade Police Department as a defendant. [ECF No. 84]. Plaintiff brings seven counts: a 42 U.S.C. § 1983 claim under municipal liability theory (Count I), and a state-law negligence claim (Count IV) against Miami-Dade County; a 42 U.S.C. § 1983 claim for failure to intervene against Detective Coto (Count V); and a 42 U.S.C. § 1983 claim for violating Decedent's Fourth and Fourteenth Amendment rights (Count II), state law wrongful death claims (Counts III and VI), and a state law assault and battery claim (Count VII) against Detective Garcia. On January 5, 2021, Defendants filed the instant Motion requesting that the TAC be dismissed with prejudice. [ECF No. 88].

---

[2] The complaint is titled "Third Amended Complaint", but this is only Plaintiff's second amended complaint.

## II.     LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The pleadings are construed broadly, *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).  On a motion to dismiss, the court need not determine whether the plaintiff "will ultimately prevail . . . but whether [her] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer,* 562 U.S. 521, 530 (2011).

## III.    DISCUSSION

Plaintiff concedes that Count IV is barred by sovereign immunity and abandons this claim.  Accordingly, Count IV is dismissed with prejudice and this Court will examine the remaining six counts.

### A.     Count I Against Miami-Dade County

Plaintiff sues Miami-Dade County under 42 U.S.C. § 1983 for depriving Decedent's constitutional rights pursuant to a governmental custom.  Under § 1983, any person under the color of law may be liable for any deprivation of constitutional rights. 42 U.S.C. § 1983. Ordinarily, a municipality or local government may not be sued under § 1983 for injuries inflicted by its employees. *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978). However, the law provides an exception when the injury inflicted is the result of a government custom or

practice. *Id.* To impose § 1983 liability against a municipality, Plaintiff "must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). "Because a city rarely will have an officially adopted policy of permitting a particular constitutional violation, [a plaintiff] must show that the City has a custom or practice of permitting the constitutional violation and that the City's custom or practice is the moving force behind any alleged constitutional violation." *McGirt v. Broward Coll.*, No. 15-cv-62324, 2016 WL 6138043, at \*4 (S.D. Fla. Oct. 21, 2016) (quotations omitted).  To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Rosario v. Miami-Dade Cty.*, 490 F. Supp. 2d 1213, 1224 (S.D. Fla. 2007) (quotations omitted).

Here, Plaintiff fails to sufficiently allege the existence of a custom or practice. Instead, Plaintiff merely recites the words "custom", "policy", and "practice" without any specific factual allegations in support. *See Perez v. Metro. Dade Cty.*, No. 06-cv-20341, 2006 WL 4056997, at \*2 (S.D. Fla. Apr. 28, 2006) ("[T]he simple mention of [a] 'policy and/or custom' is not enough, for a plaintiff must do something more than simply allege that such an official policy exists.") (quotations omitted). For example, Plaintiff contends "[i]t was the policy and/or custom of Miami-Dade County to inadequately and improperly investigate citizen complaints of police misconduct, by Miami-Dade Police Department Officers." [ECF No. 84 ¶ 70]. This "conclusory assertion is precisely the type of allegation that this Court has been directed to disregard under *Twombly* and *Iqbal*." *Fernandez v. The Sch. Bd. of Miami-Dade Cty., Fla.*, No. 15-cv-21915, 2015 WL 9474616, at \*4 (S.D. Fla. Dec. 29, 2015).

To support her claim of a custom or practice, Plaintiff alleges that "[p]rior to the shooting . . . , the Miami-Dade County State Attorney had not charged a police officer for a fatal shooting while on duty in 25 years" and, after the shooting, "there were 73 police shootings, fatal and non-fatal[,] that have come up for review; fifty-four are closed, eighteen remain open[,] and just one resulted in a criminal charge that ended with only a misdemeanor conviction." [ECF No. 84 ¶¶ 78, 80]. However, these allegations lack specificity and are therefore insufficient to withstand dismissal. *See Jackson v. Miami-Dade Cty.*, No. 18-cv-20665, 2018 WL 5787247, at *10 (S.D. Fla. Nov. 5, 2018) ("[G]eneral allegations of widespread misconduct, in the absence of allegations of specific instances, are insufficient to establish the existence of a custom or policy and thus do not state a plausible claim for relief."). Therefore, Count I is dismissed.

### B.    Count II Against Detective Garcia

Plaintiff brings a § 1983 claim against Detective Garcia for violating the Decedent's Fourth and Fourteenth Amendment rights. As a threshold matter, "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Because the Fourth Amendment is the proper basis for this claim, the Court analyzes the allegations under the Fourth Amendment.

"To establish a Fourth Amendment claim for excessive force, a plaintiff must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable." *Corbitt v. Vickers*, 929 F.3d 1304, 1315 (11th Cir. 2019), *cert. denied*, 141 S. Ct. 110 (2020) (quotations omitted). Because Decedent was shot, Defendants concede that a seizure occurred. *See Carr v. Tatangelo*, 338 F.3d 1259, 1268 (11th Cir. 2003), *as amended* (Sept. 29, 2003) (finding Plaintiff

5

"was seized within the meaning of the Fourth Amendment when the bullet struck or contacted him."). Thus, the question that remains is whether Plaintiff has properly alleged that the seizure was unreasonable.

Courts look at these three nonexclusive factors to determine whether the force used in a particular seizure was reasonable: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1321 (11th Cir. 2017). Here, Plaintiff alleges that Detective Garcia's actions were unreasonable based on the severity of the crime. The nature of Decedent's infraction was minimal in that he was only pulled over for failing to make a complete stop at a stop sign, which is only punishable by a fine and court costs. Plaintiff alleges that it was Smith, not Decedent, that posed an immediate threat to the safety of the officers or others because Smith pointed a gun at the police vehicle. Although Detective Garcia reported that Decedent had a handgun, the TAC alleges that there is no physical evidence or eyewitnesses that could support the contention that Decedent had a gun and therefore posed a threat to the safety of the officers or others. Plaintiff also alleges that it was Smith, not Decedent, who attempted to evade arrest when he jumped out of the car and fled on foot. Therefore, Plaintiff has sufficiently alleged that Detective Garcia used unreasonable force in seizing Decedent. Therefore, the Motion to Dismiss Count II is denied.

### C.    Counts III and VI against Detective Garcia

In Counts III and VI, Plaintiff asserts state law claims for wrongful death against Detective Garcia. Defendants move to dismiss these claims because they are duplicative of Count II, which alleges excessive force. "Duplicative claims are those that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." *Manning v.*

*Carnival Corp.*, No. 12-cv-22258, 2012 WL 3962997, at *2 (S.D. Fla. Sept. 11, 2012). "To promote judicial economy, a court should dismiss claims that are duplicative of other claims." *Id.* (quotations omitted).

Here, Plaintiff recites almost verbatim the same allegations in Counts III and VI as already alleged in Count II. *Compare* [ECF No. 84 ¶¶ 100–113] *with* [ECF No. 84 ¶¶ 86–99]. However, Counts III and VI allege state law violations for wrongful death as opposed to constitutional violations for excessive force; therefore, they are decided under a *different* legal standard and *different* relief is available. Thus, Counts III and VI shall not be dismissed as duplicative of Count II.

In Counts III and VI, Plaintiff seeks to hold Detective Garcia liable for Decedent's wrongful death, which arose out Detective Garcia's use of excessive force. Under Florida law, a right of action for wrongful death exists "[w]hen the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person . . . and the event would have entitled the person to maintain an action and recover damages if death had not ensued." Fla. Stat. Ann. § 768.19. "Although Florida's Wrongful Death Act allows for recovery where the death is caused by negligence, when a plaintiff's allegations concern excessive force, the liability must arise from intentional torts." *Fontanez v. Lamberti,* No. 10-cv-61428, 2011 WL 4499016, at *13 (S.D. Fla. Sept. 27, 2011); *see also Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1294 (11th Cir. 2009) ("[T]here is no cause of action for the negligent use of force."); *Rincon v. Miami-Dade Cty.*, No. 16-cv-22254, 2020 WL 7344633, at *11 (S.D. Fla. Mar. 31, 2020), *report and recommendation adopted*, No. 1:16-cv-22254, 2020 WL 6536417 (S.D. Fla. Nov. 6, 2020) ("[I]t is not possible to have a cause of action for 'negligent' use of excessive force because there is no such thing as the 'negligent' commission of an 'intentional' tort.") (quoting *City of Miami v.*

*Sanders*, 672 So. 2d 46, 48 (Fla. Dist. Ct. App. 1996)). Therefore, "[a]ny liability under state law attributed to [Detective Garcia] for the use of excessive force must arise from the intentional tort of battery. . . ." *Fontanez*, 2011 WL 4499016, at *13 (quoting *Vaughn v. City Orlando,* No. 6:07–cv–1695–Orl–19GJK, 2009 WL 3241801, at *8 (M.D. Fla. Sept.29, 2009)).

In Counts III and VI, Plaintiff re-alleges the previous allegation that Detective Garcia "intentionally and willfully subjected [Decedent] to assault [and] battery". [ECF No. 84 ¶ 1]. As such, Plaintiff has alleged that Detective Garcia's liability for Decedent's wrongful death arises from intentional torts. Therefore, Counts III and VI are sufficiently pled. However, because Counts III and VI stem from identical allegations, are decided under identical legal standards, and have identical relief, they are duplicative of one another. Therefore, only one may proceed. Accordingly, the Motion to Dismiss is granted as to Count VI.

### D.    Count VII Against Detective Garcia

However, Plaintiff's assault and battery claims against Detective Garcia cannot stand as independent causes of action "[w]hen [the] personal injury to the decedent results in death." Fla. Stat. Ann. § 768.20. "[W]hen death is the result of a personal injury, the law of Florida essentially substitutes a statutory wrongful death action for the personal injury action that would otherwise survive under section 46.021." *Alexander v. Loar*, No. 16-CV-14422, 2017 WL 7793846, at *2 (S.D. Fla. Jan. 12, 2017) (citing *Niemi v. Brown & Williamson Tobacco Corp.*, 862 So. 2d 31, 33 (Fla. Dist. Ct. App. 2003), *approved sub nom. Capone v. Philip Morris USA, Inc.*, 116 So. 3d 363 (Fla. 2013)). Therefore, "[b]ecause the alleged assault and battery by [Detective Garcia] contributed to the death of Decedent, Plaintiff[] can bring the assault and battery claim only through their wrongful death claim." *O'Brien v. City of Pembroke Pines, Fla.*, No. 05-cv-61366, 2006 WL 8431604, at *4 (S.D. Fla. Feb. 16, 2006). Therefore, Count VII is dismissed.

### E.    Count V Against Detective Coto [3]

Plaintiff asserts a claim under § 1983 against Detective Coto for failure to intervene. As an affirmative defense, Defendants claim that Detective Coto is entitled to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) ("Qualified . . . immunity is an affirmative defense that must be pleaded by a defendant official."). Courts apply a two-part test to determine whether a government official is entitled to qualified immunity. *Harbert Int'l v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). First, the government official "must prove that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Id.* Next, the burden shifts to the plaintiff to show that the government official's conduct violated a clearly established statutory or constitutional right. *Id.* Here, Plaintiff alleges, and Defendants agree, that Detective Coto was acting within the scope of his duties as an officer. *See* [ECF No. 84 ¶ 10]; [ECF No. 89 at 16]. Thus, the burden shifts to Plaintiff.

Plaintiff alleges that Detective Coto had a duty to intervene and stop Detective Garcia from violating Decedent's clearly established constitutional rights but failed to do so. Yet, the TAC is devoid of allegations that would allow the Court to conclude that Detective Coto had time, or a reasonable opportunity, and was in a position to intervene. *See Marantes v. Miami-Dade Cty.*, 649 F. App'x 665, 672 (11th Cir. 2016) ("[P]laintiff must show that the non-intervening officer was in a position to intervene yet failed to do so."). In fact, Plaintiff's TAC offers contradicting allegations as to where Detective Coto was during the fatal encounter. Accordingly, Count V is dismissed.

## IV.    CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that:

---

[3] The TAC mislabels this count as Count Four, but it is the fifth count in the TAC.

1.  Defendants' Motion to Dismiss Third Amended Complaint, [ECF No. 88], is **GRANTED in part**;

2.  Counts IV, VI and VII are **DISMISSED with prejudice.**

3.  Counts I and V are **DISMISSED without prejudice**.

4.  Counts II and III shall proceed.

5.  Plaintiff may request leave to file an amended complaint on or before **September 20, 2021**. Failure to do so will result in the Court dismissing Counts I and V with prejudice.[4]

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of September, 2021.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[4] If Plaintiff wishes to amend her Complaint, she must request leave to file an amended complaint in a properly filed motion before the Court. *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." (citation omitted)); *see also Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) (per curiam) (stating that "[f]iling a motion is the proper method to request leave to amend a complaint," and in moving for leave to amend, a plaintiff must comply with Federal Rule of Civil Procedure 7(b) by either "set[ting] forth the substance of the proposed amendment or attach[ing] a copy of the proposed amendment").