**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 19-cv-22799-DPG

SYBIL HARRIS, as Personal Representative of the Estate of Jamar Edward Rollins,

Plaintiff,

v.

DETECTIVE ANDREW GARCIA,

Defendant.
_______________________________________/

**REPORT AND RECOMMENDATIONS**

**THIS MATTER** comes before the Court on Defendant Detective Andrew Garcia's Motion for Summary Judgment (ECF No. 146). All pre-trial dispositive matters have been referred to the undersigned by the Honorable Darrin P. Gayles, United States District Court Judge, for a report and recommendation (ECF No. 154). Upon review of the Motion, Plaintiff's Response (ECF No. 148), Defendant's Reply (ECF No. 150), and the corresponding Statement of Facts (ECF Nos. 145, 149) the undersigned respectfully **RECOMMENDS** that Defendant's Motion for Summary Judgment (ECF No. 146) be **GRANTED** as follows.

As a preliminary matter, the Court notes that Plaintiff failed to file a separate response in opposition to Defendant's Statement of Material Facts. Plaintiff instead included within the body of her Response in Opposition to Defendant's Motion for Summary Judgment a "Summary of Plaintiff's Undisputed Facts" and a "Summary of Defendant's Material Facts." (ECF No. 148 at 2–3). This practice is in direct violation of the Southern District of Florida's Local Rule 56.1 which requires that "[a]ll statements of material facts . . . shall be filed and served as separate documents." S.D. Fla. L.R. 56.1(b)(1).

Strikingly, what "summary" Plaintiff does provide in response to Defendant's Statement of Material Facts fails to support each fact with "specific, pinpoint references to particular parts of the record." S.D. Fla. L.R. 56(1)(b)(1)(A). Or, for that matter, *any* citations to record evidence. Rather, Plaintiff offers only conclusory, self-serving declarations regarding her "disagree[ments]" with Defendant's facts. "[C]onclusory allegations without specific supporting facts have no probative value." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

Indeed, the Local Rule provides:

> All material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party' Statement of Material facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply.

S.D. Fla. L.R. (56)(1)(c). Ultimately, "[t]he proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement." *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008).

Given that the Court has before it "the functional analog of an unopposed motion or summary judgment," *id.*, Defendant's facts may be deemed admitted. Still, "the Court must find that the movant's statement of material facts is supported by the record." *Seventh Chakra Films, LLC v. Alesse*, 666 F. Supp. 3d 1250, 1257 (S.D. Fla. 2023).

The Court is further empowered to deem Defendant's facts as undisputed under Federal Rule of Civil Procedure 56(d): "if a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (2) consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(d)(2).

With this framework in mind, the following facts are undisputed and supported by the record

before this Court.[1] After an overview of the factual background, the Court will turn to the question of whether these undisputed facts support a finding of qualified immunity.

## I. BACKGROUND

### A. Factual Background

On December 30, 2016, two officers, Detectives Garcia and Jesus Coto, were patrolling the Perrine area in Miami-Dade County. (ECF No. 145-2 at 76:22–25); (ECF No. 145-3 at 12:20–25, 14:12–24, 16:17–21). Detective Coto was driving the car. (ECF No. 145-3 at 12:9–15). Neither Detectives Garcia nor Coto had a body-worn camera and their unmarked vehicle did not have a dashboard camera. (ECF No. 145-2 at 8:11–14); (ECF No. 145-3 at 10:7–10). The detectives observed a black Nissan Altima speeding and failing to stop at stop signs, so they turned on their police lights and initiated a traffic stop. (ECF No. 145-2 at 8:1–10).

The driver of the black Nissan Altima, Jamar Rollins, refused to pull over. (ECF No. 145-2 at 8:3). The detectives then witnessed the passenger of the Altima, Devin Smith, lean out of the car and point a firearm at the detectives' car. (ECF Nos. 145-2 at 7:25–8:6, 8:15–18); (ECF No. 145-3 at 18:6–16).

As the Altima pulled over, Mr. Smith fled the area on foot. (ECF No. 145-3 at 17:14–19). Detective Garcia exited the vehicle to chase Mr. Smith (ECF No. 145-2 at 12:2–15), while Detective Coto remained in the car (ECF No. 145-3 at 17:20–24). After exiting the vehicle, Detective Garcia approached the Altima from the rear passenger side, where Mr. Rollins was still in the driver's seat. (ECF No. 145-2 at 15:6–8).

Detective Garcia testified he saw Mr. Rollins retrieving a firearm from the steering column of his vehicle. (ECF No. 145-2 at 7:1–14, 15:6–16). Detective Garcia gave verbal commands to Mr.

[1] The facts are taken from Defendant's Statement of Undisputed Facts, Reply Statement of Undisputed Material Facts, and a review of the corresponding record citations and submitted exhibits.

Rollins, after which Mr. Rollins pointed his firearm at Detective Garcia. (ECF No. 145-2 at 16:2–18). Detective Garcia then fired several shots at Mr. Rollins into his vehicle. (ECF No. 145-2 at 16:21–17:4).

Mr. Rollins died at the scene. According to Medical Examiner findings, Mr. Rollins suffered seven gunshot wounds. (ECF No. 145-8 at 2–3). Mr. Rollins' injuries were fatal but not immediately incapacitating, allowing him to exit the car after being shot. (ECF No. 145-9 at 36:5–11); (ECF No. 145-9 at 36:5–11).

Detective Coto saw Mr. Rollins come out of his Altima and throw a gun across the street. (ECF No. 145-3 at 25:1–17, 27:12–19). Both Detectives Garcia and Coto testified to having heard the gun hit the chain-link fence nearby. (ECF No. 145-2 at 23:4–16, 30:17–31:5); (ECF No. 145-3 at 25:5–17). The gun collected at the scene was identified as a Glock 19 Gen 4. (ECF No. 149-1 at ¶ 2).

It should be noted here that, instead of citing to record evidence to dispute Defendant's facts, Plaintiff advances two arguments. First, she points to the absence of any statements from Mr. Rollins or Mr. Smith because both have passed away and are unavailable to provide their statements. (ECF No. 148 at 3).[2] Plaintiff further avers that "none of the weapons had Rollins' DNA, fingerprints, or blood on them." (*Id.* at 10).[3]

---

[2] Plaintiff states in her response that Mr. Smith has since died. (ECF No. 148 at 3).

[3] In his reply, Defendant argues that the DNA and fingerprint reports are inconclusive, attaching as exhibits Declarations from the Criminalist who analyzed the DNA on the gun (ECF No. 149-3), and the latent fingerprint examiner of the gun (ECF No. 149-1). The sworn statement of the criminalist states that "the comparison of the DNA results could not support an inference of inclusion or exclusion when comparing the DNA mixture on the grip to the DNA standards" of Mr. Rollins. (ECF No. 149-3 at ¶ 4). The latent fingerprint examiner's sworn testimony provided that "no latent prints of value were developed to be compared to the standard prints of" Mr. Rollins. (ECF No. 149-1 at ¶ 7).

Nevertheless, even assuming that the gun found at the crime scene was proven not to have belonged to Mr. Rollins, there is no material dispute established by the record that Mr. Rollins pointed a gun at Defendant. (ECF No. 145-2 at 16:4–5).

### B. Procedural Background

Plaintiff, Mr. Rollins' mother and appointed personal representative, filed suit in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida on December 27, 2018. (ECF No. 1-1). Defendants removed this action to this Court under federal question jurisdiction on July 8, 2019. (ECF No. 1). Plaintiff filed her Fourth Amended Complaint—the operative Complaint—against Miami-Dade County, Detective Coto, and Detective Garcia. Detective Coto and Miami-Dade County's Joint Motion to Dismiss with Prejudice were granted on August 10, 2022 (ECF No. 117), leaving Detective Garcia as the sole remaining Defendant. Plaintiff's Complaint brings two causes of action against Detective Garcia: Violation of Civil Rights While Acting Under Color of Law, 42 U.S.C. § 1983 for excessive force (Count two); and wrongful death under Florida state law (Count three).

Detective Garcia ("Defendant") moves now for summary judgment on counts two and three, arguing that he is entitled to qualified immunity against Plaintiff's § 1983 claim, and sovereign immunity against Plaintiff's state law claim.

## II. LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge

this burden, the movant must identify an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must support its assertion that a genuine material fact remains in dispute by citing to specific parts of the record. *Sutton v. Royal Caribbean Cruises Ltd.*, 285 F. Supp. 3d 1349, 1351 (S.D. Fla. 2018) ("In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, answers to interrogatories, and admissions that a specific fact exist demonstrating a genuine issue for trial."), *aff'd*, 774 F. App'x 508 (11th Cir. 2019). A fact or issue is material for purposes of summary judgment only if it might affect the outcome of the suit under the governing law. *Webb v. Carnival Corp.*, 360 F. Supp. 3d, 1343 (S.D. Fla. 2017). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Id.* at 1344 (citing *Celotex Corp.*, 477 U.S. at 323).

In considering a motion for summary judgment, a court must evaluate the evidence and make all inferences in the light most favorable to the nonmoving party. *Sutton*, 285 F. Supp. 3d at 1351 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586). However, the nonmoving party may not merely point to a scintilla of evidence that creates a metaphysical doubt about an issue; instead, the evidence must be sufficient to allow a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co*., 475 U.S. at 586–87. Evidence is required; conclusory and unsubstantiated averments will not do, *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000), and citations to specific record evidence are necessary. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112,

1116–17 (11th Cir. 1993). "When a party moves for final, not partial, summary judgment, we have stated that 'it [becomes] incumbent upon the [nonmovant] to respond by, at the very least, raising in their opposition papers any and all arguments or defenses they felt precluded judgment in [the moving party's] favor.'" *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (quoting *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1264 (11th Cir. 2001)) (alterations in original).

## III. ANALYSIS

### A. Qualified Immunity as to Plaintiff's Excessive Force Claim (Count Two).

Qualified immunity shields a government official from liability unless he violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996). To receive qualified immunity, the officer "bears the initial burden to prove that he acted within his discretionary authority." *Dukes v. Deaton*, 852 F.3d 1035, 1041 (11th Cir. 2017). Plaintiff concedes that Defendant was acting within his discretionary authority (ECF No. 148 at 6), so "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

Plaintiff must meet the two-part standard set forth by the Supreme Court in *Pearson v. Callahan*, 555 U.S. 223 (2009). Plaintiff must allege facts that establish that the officer violated Mr. Rollins' constitutional rights; and second, Plaintiff must also show that the right involved was "clearly established" at the time of the putative misconduct. *See id.* at 232. This inquiry is "undertaken in light of the specific context of the case, not as a broad general proposition." *Lee*, 284 F.3d at 1194. In *Pearson*, the Supreme Court concluded that a court may assess these factors in any order. *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012). However, in this instance, it would conserve judicial resources to first address whether Mr. Rollins suffered a constitutional violation, as that analysis works in tandem with the standard for immunity on Plaintiff's state-law claim. *See*

*Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009) (considering constitutional violation prong first because the court would need to apply the same analysis as to the plaintiff's other claims).

Plaintiff claims that, when Defendant shot Mr. Rollins, he used excessive force in violation of Mr. Rollins' Fourth Amendment right to be free from unreasonable seizure. Defendant argues that, based on the record evidence, Detective Garcia had arguable probable cause to believe his life was in danger when he used deadly force against Mr. Rollins. Plaintiff denies that Defendant faced a threat of serious bodily harm and argues that the use of force was clearly excessive.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A seizure can be accomplished in an instant, for example and most starkly as a result of deadly force from a police bullet." *West v. Davis*, 767 F.3d 1063, 1070 (11th Cir. 2014) (citing *Tennessee v. Garner*, 471 U.S. 1, 9 (1985)). "But, 'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Penley v. Eslinger*, 605 F.3d 843, 849 (11th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

"In order to determine whether the amount of force used by a police officer was proper, a court must ask 'whether a reasonable officer would believe that this level of force is necessary in the situation at hand.'" *Lee*, 284 F.3d at 1197. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citing *Garner*, 471 U.S. at 6) (internal quotation marks omitted). This analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Penley*, 605 F.3d at 850 (quoting *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009)).

However, the Eleventh Circuit has advised that Courts "must be careful to evaluate the reasonableness of an officer's conduct on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Penley*, 605 F.3d at 850 (internal citations and quotations omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

"As to deadly force, a police officer may use such force to dispel a threat of serious physical harm to either the officer or others, or to prevent the escape of a suspect who threatens this harm." *Singletary v. Vargas*, 804 F.3d 1174, 1181 (11th Cir. 2015). The Eleventh Circuit has "held that it is reasonable, and therefore constitutionally permissible, for an officer to use deadly force when he has 'probable cause to believe that his own life is in peril.'" *Id.* (quoting *Robinson v. Arrugueta*, 415 F.3d 1252, 1256 (11th Cir. 2005)); *see also Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009) ("[A]n officer need only have arguable probable cause, not actual probable cause, in order to qualify for immunity from a Fourth Amendment claim.").

Plaintiff argues that Defendant was not acting as a reasonable police officer would in the same circumstances. In support of this, Plaintiff cites the undisputed fact that Detective Coto did not deploy his service weapon at the scene. (ECF No. 148 at 9). Of course, this argument ignores the undisputed fact that Detective Coto did not exit the police cruiser, nor did he see Mr. Rollins

point a gun at him, as Defendant testified. Therefore, Detective Coto was not in the same circumstances as Defendant. *See* (ECF No. 145-3 at 19:7–9, 20:19–23).

Because there is no record evidence to dispute Defendant's testimony that Mr. Rollins pointed a gun at him, the question the Court must consider is whether Defendant reacted reasonably under the circumstances. *See Terrell v. Smith*, 668 F.3d 1244, 1251 (11th Cir. 2012) ("The constitutional test for excessive force is necessarily fact specific.").

The record evidence here supports a finding that Defendant had arguable probable cause that his life was in danger. Defendant testified that while pursuing Mr. Rollins' vehicle to initiate the traffic stop, Mr. Rollins' passenger pointed a gun at Defendant's vehicle. (ECF No. 145-2 at 9:3–5). After Mr. Rollins pulled over the vehicle, Defendant chased a fleeing Mr. Smith on foot. (*Id.* at 12:2–5). Defendant approached Mr. Rollins' vehicle from the rear passenger side, where he saw Mr. Rollins "retrieve a firearm from the steering column." (*Id.* at 15:10–11). Defendant gave Mr. Rollins multiple commands. (*Id.* at 15: 18–20). Finally, Defendant saw Mr. Rollins "turn[] towards [him] and point[] a firearm towards [him]." (*Id.* at. 16: 4–5). Plaintiff's unsubstantiated denials of Defendant's version of events are insufficient to meet her burden at summary judgment. The record evidence supports that Defendant had probable cause to believe he was in danger at the time of the incident. Therefore, Plaintiff has failed to establish that Defendant violated a constitutional right by exceeding the amount of force warranted under the circumstances.

Plaintiff also argues that Defendant's actions were unreasonable because Mr. Rollins was not suspected of a violent crime but rather a traffic infraction for speeding and failing to obey stop signs. (ECF No. 148 at 7). Plaintiff cites to *Penley v. Eslinger* for the proposition that the severity of the crime should be included in the balancing test for objective reasonableness. 605 F.3d at 850. Indeed, *Penley* supports the conclusion that Defendant's application here was not a violation of Mr.

Rollins' Constitutional Rights: in considering the shooting of a student who brought a firearm to school, the *Penley* Court reasoned that "[b]ringing a firearm . . . and refusing to comply with officers' commands to drop the weapon are undoubtedly serious crimes," weighing in favor of a finding of qualified immunity. *Id.* So too here, the undisputed facts reveal that Mr. Rollins pointed a firearm at the officer and failed to heed his commands. Despite Plaintiff's insistence that "[t]here was no reason for [Defendant] to suspect Mr. Rollins might be armed" (ECF No. 148 at 7), Defendant testified that he witnessed both Mr. Rollins and his passenger point a gun at him in the moments leading up to the use of force. (ECF No. 145-2 at 8:15–18, 15:6–11). Therefore, this factor too weighs in favor of finding Defendant acted reasonably.

Accordingly, the undersigned submits that Defendant is entitled to qualified immunity at this stage of the proceeding and his motion for summary judgment should be granted.

**B. Plaintiff's State Wrongful Death Claim (Count III).**

"Florida's Wrongful Death Act allows for recovery when the death of a person is caused by, inter alia, negligence or a 'wrongful act,' which includes the use of excessive force by a police officer." *Fontanez v. Lamberti*, No. 10-61428-CIV, 2011 WL 4499016, at *13 (S.D. Fla. Sept. 27, 2011) (quoting *Vaughn v. City of Orlando*, No. 6:07-cv-1695-Orl-19GJK, 2009 WL 3241801, at *8 (M.D. Fla. Sept. 29, 2009)). However, "when a plaintiff's allegations concern excessive force, the liability must arise from intentional torts." *Id.* "Florida also recognizes a cause of action for the negligent handling of a firearm and the negligent decision to use a firearm separate and distinct from an excessive force claim." *Vaughn v. City of Orlando*, No. 6:07-cv-1695-Orl-19GJK, 2009 WL 3241801, at *8 (M.D. Fla. Sept. 29, 2009) (citations and internal quotation marks omitted).

Pursuant to section 776.05(1), "'[l]aw enforcement officers are provided a complete defense to an excessive use of force claim where an officer reasonably believes [the force] to be necessary

to defend himself or another from bodily harm while making the arrest.'" *Fontanez*, 2011 WL 4499016, at *14 (quoting *Btesh v. City of Maitland*, No. 6:10-cv-71-Orl-19DAB, 2011 WL 3269647, at *26 (M.D. Fla. July 29, 2011)). "The question of whether or not deadly force was reasonable under section 776.05(1), as with the Fourth Amendment, is an objective inquiry." *Id.*

"Given that the standard for both federal excessive force and Florida battery claims relies on the same reasonable officer standard, courts often decide state battery claims based on the reasonableness analysis performed for the federal excessive force claims." *Leonard v. Silva*, No. 21-60627-CIV, 2022 WL 18493119, at *12 (S.D. Fla. Dec. 26, 2022), *aff'd sub nom.*, No. 23-10244, 2023 WL 6142188 (11th Cir. Sept. 20, 2023). As discussed at length above, it is undisputed that Defendant saw Mr. Rollins point a gun at him. Therefore, it was objectively reasonable for Defendant to believe that deadly force was necessary to defend himself. Accordingly, Defendant acted reasonably in using deadly force under the circumstances.

Additionally, Defendant asserts a defense under Florida's sovereign immunity statute, section 768.28(9)(a), Florida Statutes. Under Florida law, Defendant may only be liable for his acts if they were "committed while they were acting outside the course and scope of their employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard for human rights, safety or property." *Knight v. Miami-Dade Cnty.*, No. 09-23462-CIV, 2010 WL 11442714, at *5 (S.D. Fla. June 23, 2010). Plaintiff's response fails to address this heightened standard; instead, she declares once more that Defendant "knew when he shot Rollins seven times resulting in his death that he was violating the law." (ECF No. 148 at 15). Therefore, Plaintiff has not met her burden for overcoming Florida law conferring Defendant with sovereign immunity.

For the reasons stated above, the Court recommends that Defendant's motion be granted as to Plaintiff's wrongful death claim.

## IV. CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant Garcia's Motion for Summary Judgment be **GRANTED**.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable Darrin P. Gayles, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendations. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida, this 7th day of June, 2024.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

cc: All Counsel of Record